FILED
2014 Dec-31  PM 04:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| SHARON DIANNE WALTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JONATHAN WADE DUNNING, | )   Case No.: 2:13-cv-00517-JEO |
| an individual, and BIRMINGHAM | ) |
| HEALTHCARE, INC., an Alabama | ) |
| Corporation; and SYNERGY | ) |
| MEDICAL SOLUTIONS, INC., an | ) |
| Alabama Corporation, | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION

Defendants, Birmingham Healthcare, Inc. ("BHC") and Synergy Medical Solutions, Inc. ("Synergy"), have moved for summary judgment pursuant to FEDERAL RULE OF CIVIL PROCEDURE 56 on all of the claims brought by Plaintiff, Sharon Dianne Waltz. (Doc. 50 & 54).[1] The claims arise out of the alleged improper conduct of Jonathan Dunning ("Dunning"), the Chief Executive Officer of BHC and Synergy, during Plaintiff's employment with both companies. The motions for summary judgment are properly under submission, having been fully briefed and supported by evidentiary submissions. (Docs. 51, 55-57, 59, 60-67, 69-70).[2] For the reasons stated below, the Court finds that both motions are due to be granted.

---

[1] Citations to "Doc(s). __" are to the electronic document numbers assigned by the clerk to pleadings, motions, and other materials in the court file, as reflected on the docket sheet.

[2] The parties consented to the jurisdiction of the undersigned United States Magistrate Judge. (See Docs. 15 & 29).

I.     BACKGROUND

A.     Facts[3]

Plaintiff, a professional licensed clinical psychologist, began working at BHC in 2001 as a part of her post-doctoral fellowship. (First Deposition of Sharon Waltz[4] ("1st Waltz Dep.") at 20-22). She was hired by BHC on a part-time basis on September 1, 2002, as Behavioral Science Director. (Second Deposition of Sharon Waltz[5] ("2d Waltz Dep.") at 28). She began working full time at BHC in October 2002. (Jonathan Dunning Deposition[6] ("Dunning Dep.") at 21). Dunning was the Chief Executive Officer ("CEO") at that time and Plaintiff reported directly to him. (Dunning Dep. at 122-23; 1st Waltz Dep. at 22, 83). Plaintiff worked as a full-time employee at BHC from October 2002 through December 31, 2004. (Dunning Dep. at 21; 2d Waltz Dep. at 28, 30, 51). Plaintiff returned to BHC in July 2005, and worked there until she left again on October 31, 2008, to go to Synergy. (2d. Waltz Dep. at 51).

Soon after Plaintiff began working full-time at BHC, Dunning began making sexual comments to her on a regular basis, including that "he liked her body, he wanted [her] to wear certain jeans, [and] he liked the way [her] butt looked in those jeans." (2d Waltz Dep. at 61-62). In March 2003, following a late night of work at the office and a dinner, Dunning "took [Plaintiff] back to his office and proceeded to take off [her] clothes and have sex with [her]." (*Id*. at 63-64).

---

[3]At summary judgment, the court views the facts in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The court therefore does so here, drawing those facts from the pleadings, depositions, and other evidentiary materials on file. Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts nor are all of the facts. *See Crawford v. Carroll*, 529 F.3d 961, 964 n.1 (11th Cir. 2008).

[4]Waltz's first deposition is located at documents 53-2 and 61-2 in the record.

[5]Waltz's second deposition is located at documents 53-12 and 61-4 to 61-5 in the record.

[6]Dunning's deposition is located at documents 53-11 and 61-3 in the record.

She initially resisted his advances, including the removal of her clothes, but ultimately gave in. (*Id*. at 66-69). She then went home. She did not tell anyone about the assault until June 2012, more than nine years after the assault occurred, because she was afraid. (*Id*. at 70-71).

According to Plaintiff, initially she did not tell Dunning that she wanted to have sex with him, but on subsequent occasions she would do so if she felt he was getting upset or angry or if she thought he was going to hurt her. (*Id*. at 71). She testified that following the assault in March 2003, Dunning told her, "You're mine, no one can have you except for me; if I can't have you, no one can; you're going to be my bitch; a king needs a queen." (*Id*. at 73). She also stated that at unspecified times Dunning choked her, pulled her hair, and held her down. (*Id*. at 72). According to Plaintiff, one incident occurred in the office and one occurred in a hotel room when she refused his advances in about late 2003. (*Id*. at 72-73).

Plaintiff testified that she told Dunning "several times" that she did not want to have sex with him. (*Id*. at 74). According to Plaintiff, however, "[i]t was easier to have sex with him than to [have] him get upset or physically abus[ive with her.]" (*Id*. at 75, 86). This "consensual" relationship commenced in early 2004. (*Id*. at 76). Plaintiff and Dunning discussed a future relationship, including having children, and referred to each other as husband and wife despite the fact that Dunning was married. (*Id*. at 76, 93-94). Thereafter, they had two children together–one in 2005 and the other in 2007. (*Id*. at 77; Doc. 61-6 at 2 of 5). Dunning was present for the birth of both children. (1st Waltz Dep. at 18-19).

According to Plaintiff, she told Dunning several times in 2004 that she did not want to have sexual relations with him any longer. (2d Waltz Dep. at 87). The relationship did not end, however, and she did not complain to anyone at BHC. (*Id*. at 86). She resigned from BHC in late 2004, telling Dunning that "she did not want to have that kind of ... work environment any longer." (*Id*.

at 87).  She returned to work a couple of weeks later.  (*Id*. at 88).

Plaintiff ultimately terminated her employment with BHC on October 31, 2008, to become the Development Director at Synergy, a company started by Dunning and closely tied to BHC.  (*Id*. at 37).  Plaintiff did not tell anyone at Synergy about her relationship with Dunning because he told her not to.  (*Id*. at 103-04).

At some point in her relationship with Dunning, certainly by 2009, Plaintiff started wearing a wedding band and ring given to her by Dunning.  (*Id*. at 102-03).  Plaintiff and Dunning did many activities as a family.  They spent holidays together and took family vacations.  (1st Waltz Dep. at 30; 2d. Waltz Dep. at 13, 145-148; 221-34; BHC Ex. 2 (Sealed video disc of family vacations and other events)).  Plaintiff and Dunning took videos to commemorate special occasions.  (*Id*.) Plaintiff's parents included Dunning in their family activities, such as birthdays and holidays. (William Wright Deposition[7] ("Wright Dep.") at 47, 51:4-52:5; 1st Waltz Dep. at 38-39; 2d Waltz Dep. at 177-78).  Dunning helped cover the medical expenses incurred by Plaintiff's mother when she was stricken with cancer. (1st Waltz Dep. at 46-47).  Dunning also purchased a home and partially furnished it for Plaintiff and their children.  (2d Waltz Dep. at 106-07).

Plaintiff's physical relationship with Dunning continued until February 2012, when she stopped going on trips and to places with him.  (*Id*. at 81, 83, 94).  Plaintiff testified that about this time, Dunning commented, "You know I pay you to perform your wifely duties."  (*Id*. at 94).  She responded that she was "not doing that anymore."  (*Id*. at 94-95).  According to Plaintiff, Dunning replied, "You're just acting out, you'll come back to me, you don't mean it."  (*Id*. at 95).  She also testified that Dunning became "angrier with [her]" after their physical relationship stopped.  (*Id*. at

---

[7]Wright's deposition is located at document 53-15 in the electronic record.

91).

Plaintiff ceased working for Synergy on May 1, 2012. (*Id.* at 84). She did not complain to anyone other than Dunning about the sexual harassment she experienced while at BHC or Synergy. (*Id.* at 86, 225).

Dunning filed a complaint in the Family Court of Jefferson County, Alabama on April 25, 2012, seeking custodial rights concerning the two children born out of his relationship with Plaintiff. (Doc. 53-16).

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Synergy on July 19, 2012. (Doc. 17-1). In her charge, Plaintiff alleged she was subjected to sexual harassment by the "chief executive officer" of Synergy, and that she believed that she had to maintain a sexual relationship with him to keep her job. (*Id.* at 2). Plaintiff specified Synergy as the only organization that had discriminated against her. (*Id.*)

The EEOC investigated the charge against Synergy and informed Plaintiff on January 2, 2013, that it had been "unable to conclude that the information obtained establishes violations of the statutes." (Doc. 21-1 at 2). The EEOC's Dismissal and Notice of Rights informed Plaintiff that she had a right to sue Synergy *within ninety days*. (*Id.*) It did not name BHC, nor was a copy served on BHC. (*Id.*)

B.    **Procedural History**

This action was initially filed in Jefferson County Circuit Court against Dunning and BHC on February 14, 2013. (Doc. 1). The action was removed to federal court by the defendants as it asserted federal claims under Title VII of the Civil Rights Acts of 1994. (Doc. 1 at 1). It also included state law claims. (*Id.*) Following removal, Plaintiff filed an amended complaint, adding Synergy as a defendant. (Doc. 17). The claims in the amended complaint include harassment,

discrimination and a "hostile work environment" in violation of Title VII (Count One); invasion of privacy (Counts Two & Three); negligent hiring, supervision, training and retention (Count Four); assault and battery (Counts Five (Dunning) and Seven (BHC and Synergy)[8]); and outrage (Count Six). (Doc. 17).

Dunning has since been dismissed as a defendant on Plaintiff's motion. (Doc. 34 & 37). The Title VII claim (Count One) against Synergy has also been dismissed. (Doc. 45). All of Plaintiff's remaining claims arise from alleged sexual harassment beginning in October 2002 while she was employed under Dunning at BHC. (Doc. 17).

Presently before the court are the motions of BHC and Synergy for summary judgment on all of Plaintiff's pending claims. (Doc. 50 & 54).

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue (dispute) of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence that a genuine issue (dispute) of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). In ruling on a motion for summary judgment, the court must draw all reasonable inferences in the light most favorable to the non-moving party. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1330 n.2 (11th Cir. 2013); *Hill v. Wal-Mart*, 510 F. App'x 810, 813 (11th Cir. 2013). The court may consider materials including depositions, documents, electronically stored information, affidavits,

---

[8]While the caption to Count Seven alleges assault and battery claims against BHC, the text of the claim lists BHC and Synergy. (Doc. 17 at 15-16).

and declarations.  FED. R. CIV. P. 56(c)(1)(A ).

III.   **DISCUSSION**

    A.   **BHC's Motion**

        1.   **Plaintiff's Title VII Claim Against BHC Fails as a Matter of Law**

            a.   **Failure to name BHC**

BHC initially argues that Plaintiff's Title VII claim (Count One) fails as a matter of law because she did not meet the statutory requirements prior to bringing suit in that she failed to lodge an EEOC Charge against BHC and, even if she did, it was barred by the applicable limitations period. (Doc. 55 at 11-18). Plaintiff responds that she did include BHC in her EEOC Charge and that BHC was still directing her activities at that time. (Doc. 63 at 11-13).

A person seeking to advance a lawsuit under Title VII must first file a charge with the EEOC alleging a Title VII violation and exhaust all remedies provided by the EEOC. *Virgo v Riviera Beach Assoc., Ltd.*, 30 F.3d 1350, 1358 (11th Cir. 2010). "A charge ... shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e)(1); *accord*, *Pijnenburg v. West Ga. Health Sys., Inc.*, 255 F.3d 1304, 1305 (11th Cir. 2001) ("It is settled law that in order to obtain judicial consideration of a [Title VII] claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred."). This requirement guarantees "the protection of civil rights laws to those who promptly assert their rights" and "also protects employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State Coll. v. Ricks*, 449 U.S. 250, 256-57 (1980).

Typically, a party not named in the EEOC charge may not be sued in a later action. *Id.* "This naming requirement serves to notify the charged party of the allegations and allows the party

an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII.... However, courts liberally construe this requirement." *Id*. (citations omitted). "Where the purposes of the Act are fulfilled, a party unnamed in the EEOC charge may be subjected to the jurisdiction of the federal courts." *Id*. at 1359 (citation omitted). In determining whether the purposes of the Act have been fulfilled, the court must look to several factors:

> (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.

*Id*. Other factors may be relevant depending on the specific facts of the case. *Id*. For instance, "whether an investigation of the unnamed party 'could have reasonably grown out of [the EEOC] charge'" may be considered. *Lewis v. Asplundh Tree Expert Co.*, 402 F. App'x 454, 457 (11th Cir. 2010) (quoting *Hamm v. Members of Bd. of Regents*, 708 F.2d 647, 650 (11th Cir. 1983)).

Here, Plaintiff's EEOC Charge listed only Synergy, and the right-to-sue letter issued by the EEOC also listed only Synergy as the respondent Plaintiff had a right to sue. (Doc. 17-1 at 2; doc. 53-13). In her Charge, Plaintiff asserted, in part, as follows:

> I am a female. I was hired by the above employer [Synergy] in October 2009 as a development director. I had worked for a predecessor company with the same chief executive officer prior to coming on board with this company. I was subjected to sexual harassment by the chief executive officer from the time I started working for him in 2002 up until 2012. It was required that I have a sexual relationship with the chief executive officer if I wanted to keep my job. On May 1, 2012, I could no longer tolerate the arrangement and was constructively discharged.

(Doc. 17-1 at 2). Plaintiff also stated in response to the question "What happened to you that you believe was discriminatory?" by stating that the sexual harassment "[b]egan when [Dunning] was CEO of another organization, BHC" and continued at "Synergy beginning 10/2009." (*Id*. at 5).

Plaintiff argues that because BHC and Synergy are functionally identical companies with actual notice of the charge, she has met the statutory requirements.  (Doc. 63 at 13-15).

Plaintiff further argues that the statutory requirements have been met because of the following: (1) Dunning was the CEO at both corporations, (2) he formed Synergy to take money from BHC, (3) Synergy immediately contracted with BHC for business, (4) Dunning could not remember who the BHC board members were, (5) Dunning was the only board member at Synergy, (6) after Dunning formed Synergy, he purchased BHC's building and leased it back to BHC through another entity he controlled, and (7) he paid vendors on behalf of BHC in the amount of $1.86 million.  (Doc. 63 at 14-15).  BHC counters that Synergy and BHC are distinct corporations.  (Doc. 65 at 7).

Applying the enumerated considerations, the court finds that Plaintiff's argument misses the mark.   First, the similarity of interest between the named party and the unnamed party does not legally exist.   Dunning operated Synergy and BHC during different periods of time.   BHC is a non-profit organization while Synergy is a for-profit organization.  (Dunning Dep. at 23).   BHC provides medical care and substance abuse and mental health treatment, while Synergy "provides billing, real estate, consulting, and management services to healthcare organizations."  (*Id*. at 21).  The interplay and relationship between the two companies does not demonstrate that they had shared interests so as to justify a conclusion that Plaintiff's failure to name BHC is not fatal.

Second, regarding whether Plaintiff could have ascertained the identity of the unnamed party at the time her EEOC charge was filed, the record is clear that Plaintiff knew about BHC.  She worked there for a number of years.  She simply did not advance her charge against BHC.

Third, concerning whether the unnamed party received adequate notice of the charges, the record fails to suggest that BHC knew of the charge or that Plaintiff was asserting a claim against

it. This factor "weighs in favor of inclusion of an unnamed party if the party's identity or participation in the alleged discrimination is or is likely to be uncovered during the EEOC's investigation." In this case, while it is clear that Dunning, the former CEO of BHC, was aware of Plaintiff's EEOC charge, nothing indicates that the officers or directors of BHC at the pertinent time (July 2012) knew of the charge. Additionally, in view of the lapse of time since Dunning was employed at BHC, it was not reasonable to assume BHC would be deemed a part of the claim against Synergy.

Fourth, concerning whether the unnamed party had adequate opportunity to participate in the reconciliation process, the record fails to demonstrate that BHC had any opportunity to participate. Again, while Dunning was on notice of the charge and able to participate, there is no evidence that BHC's officers, directors or counsel had the opportunity to participate on behalf of BHC.

Lastly, regarding whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings, the record is silent. In view of the fact that BHC was not a participant in the process, it is only reasonable to assume that it was prejudiced by the exclusion as it was precluded from advancing any defenses to the present allegations. The court further notes that the EEOC investigation does not appear to have addressed Plaintiff's claims to the extent she now claims they relate back to her time at BHC. That likely is because BHC was not named in her charge and the conduct was well outside the limitations period for advancing such a claim.

Premised on the foregoing, the court finds that Plaintiff is precluded from advancing her Title VII claim against BHC. Allowing plaintiff to pursue a dilatory claim against BHC would not advance the purposes of Title VII or the EEOC. *See Lewis v. Asplundh Tree Expert Company*, 402 F. App'x 454, 457 (11th Cir. 2010) (stating that to "[p]ermit Lewis to sue the City despite his failure

to name it as a party in his EEOC charge would not further the purposes of Title VII"). The claim, therefore, is due to be dismissed.

b.        **Statute of limitations**

The Title VII claim against BHC also is due to be dismissed because Plaintiff's EEOC Charge was filed well beyond the statute of limitations.

> ...."[A] charge... shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e)(1). *Accord, Pijnenburg v. West Ga. Health Sys., Inc*., 255 F.3d 1304, 1305 (11th Cir.), reh'g denied, 273 F.3d 1117 (11th Cir. 2001) ("It is settled law that in order to obtain judicial consideration of a [Title VII] claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred."). This requirement guarantees "the protection of civil rights laws to those who promptly assert their rights" and "also protects employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State Coll. v. Ricks*, 449 U.S. 250, 256-57, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980).
>
> The United States Supreme Court has explained that "strict adherence" to this procedural requirement "is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S. Ct. 2486, 65 L. Ed. 2d 532 (1980). By choosing this relatively short deadline, "Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." *Id*. Indeed, this procedural rule, is not a mere technicality, but an integral part of Congress' statutory scheme that should not "be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152, 104 S. Ct. 1723, 80 L. Ed. 2d 196 (1994). Thus, if a plaintiff fails to file an EEOC charge before the 180-day limitations period, the plaintiff's subsequent lawsuit is barred and must be dismissed for failure to exhaust administrative remedies. *See, e.g., Brewer v. Alabama*, 111 F. Supp. 2d 1197, 1204 (M.D. Ala. 2000).

*Thomas v. Alabama Council on Human Relations, Inc*., 248 F. Supp. 2d 1105, 1114-15 (M.D. Ala. 2003).

Plaintiff alleges the sexual harassment began in October 2002 during her employment with BHC. According to her allegations, the harassment included Dunning forcing her to have sex with him at his office in April 2003. Dunning left BHC in 2008 to run Synergy. (Dunning Dep. at 22-

11

23).  Plaintiff ended her employment with BHC in October 2008 when she went to Synergy.  Her Charge of Discrimination was not filed until July 19, 2012, which was over three years after Dunning left BHC to go to Synergy and about thirty-three months after Plaintiff left BHC.  This delay necessarily precludes her Title VII claim against BHC.[9]

### 2.      State Law Claims

Plaintiff asserts state law claims of invasion of privacy (Counts Three),[10] assault and battery (Count Seven), and negligent hiring, training, supervision and retention (Count Four) against BHC.[11] (Doc. 17).  BHC argues that these claims are precluded because they were not timely filed.  (Doc. 56 at 20).  In support of this assertion, it contends that any assault and battery ("purported rape") occurred in April 2003 and that the sexual relationship became consensual in early 2004.  (*Id*. at 22-23).  Thus, BHC concludes that the applicable statute of limitations ran in early 2006, almost seven years before the lawsuit was filed.  (*Id*.)  Plaintiff counters that the suit was timely filed because she "was still under the direction and supervision of [BHC]."  (Doc. 63 at 17).

It is undisputed that the applicable statute of limitations for these claims is two years.  ALA. CODE (1975) § 6-2-38.  Therefore, Plaintiff had to advance her claims against BHC by no later than October 2010, two years after she left BHC.  She did not.  Plaintiff's attempt at tolling is wholly insufficient under the circumstances.  She has cited no authority, and the court is unaware of any, that would allow her to advance her claims against BHC at this late juncture.  Accordingly, BHC's

---

[9]In view of the court's determination of BHC's challenges to Plaintiff's Title VII claim, it pretermits any discussion concerning the merits of the underlying hostile environment claim.  (Doc. 55 at 16-20).

[10]Count Two is an invasion of privacy claim against Dunning.  It was previously dismissed on Plaintiff's motion. (Doc. 34 & 37).

[11]Count Five is an assault and battery claim against Dunning.  Count Six is an outrage claim against Dunning.  Both were previously dismissed on Plaintiff's motion.  (Doc. 34 & 37).

motion for summary judgment is due to be granted as to Plaintiff's state law claims against it.[12]

**B.    Synergy's Motion**

Plaintiff's remaining claims against Synergy include invasion of privacy (Count Three), assault and battery (Count Seven) and negligent hiring, training, supervision and retention (Count Four).  Synergy asserts that summary judgment is due to be granted because Plaintiff's sexual relationship with Dunning was consensual and because the claims are barred by the statute of limitations.  (Doc. 51 at 13).  Synergy also asserts that there is no basis for holding it vicariously liable for Dunning's acts, as the acts were outside the line and scope of his duties with Synergy. (*Id*.)  Plaintiff retorts that her relationship with Dunning was not consensual, but a result of his threatening behavior, and that the claims are not barred by the statue of limitations.  (Doc. 60 at 4-5). She also asserts that "Synergy is obviously vicariously and directly liable for the tortious conduct of Dunning because Dunning is Synergy."  (*Id*. at 5).

**1.    Invasion of Privacy and Assault and Battery Claims**

**a.    The Substantive Claims**

To succeed on her invasion of privacy claim premised on sexual harassment, Plaintiff must show "(1) that the matters intruded into are of a private nature; and (2) that the intrusion would be so offensive or objectionable that a reasonable person subjected to it would experience outrage, mental suffering, shame, or humiliation."[13]  *Ex parte Atmore Cmty. Hosp*., 719 So. 2d 1190, 1194 (Ala. 1998) (citing *Busby v. Truswal Sys. Corp*., 551 So. 2d 322, 323 (Ala.1989)); *see also Godsey*

---

[12]In view of the court's determination of BHC's challenges to Plaintiff's state law claims, it pretermits any further discussion concerning the merits of each substantive claim.  (Doc. 55 at 21-30).

[13]"It is well settled that Alabama does not recognize an independent cause of action for sexual harassment. Instead, claims of sexual harassment are maintained under common-law tort theories such as assault and battery, invasion of privacy, negligent training and supervision, and outrage." *Ex parte Carlisle*, 26 So. 3d 1202, 1204 n.1 (Ala. 2009) (quoting *Machen v. Childersburg Bancorporation, Inc*., 761 So. 2d 981, 983 n.1 (Ala. 1999)).

*v. City of Huntsville, Ala.*, 2014 WL 6685408 *13 (N.D. Ala. 2014).

The Alabama Supreme Court has defined assault as

.... an intentional, unlawful, offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented. *Western Union Telegraph Co. v. Hill*, 25 Ala. App. 540, 542, 150 So. 709, 710 [cert. denied, 227 Ala. 469, 150 So. 711] (1933).

*Jones v. O'Reilly Automotive, Inc.*, 2012 WL 5877357 *9 (N.D. Ala. 2012) (citing *Allen v. Walker*, 569 So. 2d 350, 351 (Ala. 1990)).   Therefore, to prove assault, Plaintiff must establish: (1) that Dunning touched her; (2) that Dunning intended to touch her; and (3) that the touching was conducted in a harmful or offensive manner.  *See Evans v. Mobile Infirmary Med. Center*, 2005 WL 1840235 * 1, *6-7 (S.D. Ala. 2005) (quoting *Harper v. Winston County*, 892 So. 2d 346, 353 (Ala.2004); *see also Atmore*, 719 So. 2d at 1193.  "A successful assault becomes a battery." *Surrency v. Harbison*, 489 So. 2d 1097, 1104 (Ala.1986).  The "Alabama Supreme Court [has] noted that, in order to establish that the defendant committed a battery, there must be substantial evidence that the alleged touching occurred with sexual overtones and was unwelcome."  *Evans*, 2005 WL 1840235 at *6.  "The Alabama Supreme Court has also held that the 'manner or spirit' in which the touching occurs is critical as to whether the tort of assault exists."  *Id.* at *7 (citing *Harper v. Winston County*, 892 So.2d 346, 353 (Ala. 2004)).  To qualify as assault and battery, the touching must be done "in an angry, revengeful, rude, insolent, or violent manner."  *Id.*

Synergy asserts that the complained-of conduct cannot constitute a basis for relief because no reasonable jury could find that this conduct was "unwelcome."  While this court normally would be inclined to let the jury decide for itself whether the conduct was "unwelcome," rather than making that determination as a matter of law, this case is exceptional.

14

While Dunning's conduct was "unwelcome" at the outset and possibly for some time thereafter, the facts, even when construed most favorably to Plaintiff, demonstrate that the relationship later became consensual and that it had been that way for many years prior to February 14, 2013, the date Plaintiff filed her complaint.  The uncontested facts supporting this conclusion include the following.  First, Plaintiff and Dunning had two children together, the first in 2005 and the second in 2007.  This hardly suggests that Plaintiff was in an "unwelcome" relationship with Dunning.  Second, Plaintiff never complained to anyone during her employment with BHC or Synergy. The failure to complain about sexual harassment is very relevant in determining whether the conduct was "unwelcome." *Paraohoa v. Bankers' Club, Inc.*, 225 F. Supp. 2d 1353, 1359 (S.D. Fla. 2002).   In this instance, Plaintiff worked at BHC for approximately six years and never complained to anyone.  After she went to Synergy and the situation persisted, she still did not complain. Third, Plaintiff terminated her employment with BHC in 2004, but returned to the company just a couple of weeks later.  Additionally, she chose to follow Dunning to Synergy in 2008. Fourth, Plaintiff wore a wedding band and a ring provided by Dunning for at least three years. Fifth, the numerous text messages from Plaintiff to Dunning reflect a consensual relationship.  The record is replete with messages in which she expresses affection towards Dunning, arranges meetings with him and their children, and discusses the events of a typical day.  Sixth, the record consists of numerous videos showing the consensual nature of their relationship.  These include Plaintiff, Dunning, and their children on vacation at the beach, at a pool, at the zoo, and at Disney World, and Plaintiff and Dunning at dinner, at a birthday party, and at a school awards program. Seventh, the evidence includes numerous cards expressing affection and love between Plaintiff and Dunning.  Eighth, Plaintiff resided in a home provided and partially furnished by Dunning.  Ninth, Plaintiff provided Dunning with expensive gifts, including a $7,000 diamond bezel watch.  Tenth,

15

Dunning spent time with Plaintiff's family, and Plaintiff spent time with his family. Eleventh, Plaintiff filed her EEOC Charge and this action only after Dunning brought his custody suit.

While no single piece of evidence, standing on its own, conclusively establishes that Plaintiff and Dunning were in a consensual relationship, when all of the evidence is considered together it is clear that the relationship had become consensual more than two years before Plaintiff filed suit. Therefore, the court finds that Plaintiff's claims for assault and battery and invasion of privacy fail as a matter of law.

In reaching this conclusion the court has not ignored Plaintiff's assertion that her sexual relationship with Dunning was simply a means to keep him from getting upset or abusive with her. While such a point has considerable sway, it cannot support the present tort claims when the relationship continued for ten years and the record is replete with so much evidence indicating otherwise.

### b.    Synergy's Vicarious Liability

Assuming for the sake of the present motion that Plaintiff has articulated a factual basis for each of her tort claims, the court finds that she has failed to demonstrate that Synergy is vicariously liable for Dunning's conduct. With regard to the invasion of privacy and assault and battery claims, the court notes that since they are intentional torts, Synergy may be liable for the same only if Plaintiff demonstrates that "(1) [Dunning's] acts [were] committed in furtherance of the business of the employer; (2) [Dunning's] acts [were] within the line and scope of his employment; or (3) [Synergy] participated in, authorized, or ratified the tortious acts." *Andazola v. Logan's Roadhouse Inc.*, 871 F. Supp. 2d 1186, 1223 (N.D. Ala. 2012) (quoting *Ex parte Atmore Cmty. Hosp.*, 719 So. 2d 1190, 1194 (Ala. 1998) (alterations supplied) (citing *Potts v. BE&K Constr. Co.*, 604 So. 2d 398, 400 (Ala.1992)). "The acts of an employee are committed in furtherance of the business of his

employer when the employer derives a benefit from the acts of the employee, or when the acts of the employee serve a purpose of the employer." *Andazola*, 871 F. Supp. 2d at 1224. "The acts of an employee are not committed in furtherance of the business of his employer, however, when the 'alleged conduct was aimed solely at satisfying [the employee's] own ... desires.'" *Id.* (quoting *Atmore*, 719 So. 2d at 1194) (bracketed alteration supplied).

In *East Alabama Behavior Medicine, P.C. v. Chancey*, 883 So. 2d 162 (Ala. 2003), the court held, in accordance with Alabama law, that "sexual misconduct by an employee is purely personal and outside the line and scope of his employment." *Id.* at 169 (citing *Joyner v. AAA Cooper Transp.*, 477 So. 2d 364, 365 (Ala. 1985) (holding that a manager's attempt to force sexual acts of other employees was not in furtherance of the company's business)). Finally, " '[a]n employer ratifies conduct if: (1) the employer has actual knowledge of the tortious conduct; (2) based on this knowledge, the employer knew the conduct constituted a tort; and (3) the employer failed to take adequate steps to remedy the situation.' " *Andazola*, 871 F. Supp. 2d at 1224 (quoting *Atmore*, 719 So. 2d at 1195).

Here, Plaintiff's assault and battery and invasion of privacy claims against Synergy fail for a number reasons. First, Dunning's conduct clearly was outside the scope of his employment and arose out of purely personal reasons, thus Synergy cannot be held vicariously liable. Second, Plaintiff voluntarily followed Dunning to Synergy in 2008. As discussed previously, the relationship between Plaintiff and Dunning must be deemed consensual by this time. Third, Plaintiff admits that did she not report the harassment to anyone during the course of her employment at Synergy. (2d Waltz Dep. at 228). Absent any report of the harassment, knowledge of the offending conduct cannot be imputed to Synergy and Synergy cannot be held liable for failing to take steps to rectify it. *Doe v. Western Restaurants Corp.*, 674 So. 2d 561, 563 (Ala. 1995). Additionally,

ratification requires full knowledge of all material facts.  *Chauncey*, 883 So. 2d  at 170.

To the extent Plaintiff alleges that Synergy should still be held vicariously liable because the alleged tortious acts were committed by Dunning as Synergy's Chief Executive Officer, the court is not impressed.  While Plaintiff is factually correct that Dunning was the CEO, that is not enough to impute actual knowledge on Synergy.  She still had a duty to report the harassment.  Synergy's Discrimination Policy specifically required that any incident of discrimination or harassment involving the CEO was to be reported to Synergy's legal counsel.  (Doc. 53-13 at 25 of 42).  Plaintiff argues that to require her to complain to Synergy's legal counsel, Kenneth Dowdy, "is comical at best" because he is not only Synergy's legal counsel, but Dunning's personal lawyer as well.  (Doc. 60 at 15).  Accordingly, she concludes that Dowdy "would not have taken any action." (*Id.*)  This conclusory assertion, however, is not supported by any evidence and is insufficient to excuse her failure to follow Synergy's harassment policy.  Because Plaintiff  failed to report the harassment, her invasion of privacy and assault and battery claims against Synergy are due to be dismissed.

### 2.      Negligent Hiring, Training, Supervision and Retention Claim

With regard to Plaintiff's negligent hiring, training, supervision and retention claim against Synergy, liability on the part of an employer such as Synergy (the "master") occurs when

> notice or knowledge, either actual or presumed, of [a servant's] unfitness has been brought to him.  Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge.  It is incumbent on the party charging negligence to show it by proper evidence.  This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care must have had them brought to his notice.  While such specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of, it is proper, when repeated acts of carelessness

and incompetency of a certain character are shown on the part of the servant to leave
it to the jury whether they would have come to his knowledge, had he exercised
ordinary care.

*Andazola*, 871 F. Supp. 2d at 1224-25 (citing *Big B, Inc. v. Cottingham*, 634 So. 2d 999 (Ala. 1993)

(quoting *Thompson v.   Havard*, 285 Ala. 718, 235 So. 2d 853, 858 (1970)) (alteration supplied).

Thus, the threshold question is whether Synergy had notice of Dunning's offending conduct and

failed to take action.   Premised on the foregoing discussion, the court again finds that there is no

basis for it to find that anyone at Synergy (other than Dunning himself) had the requisite knowledge.

Moreover, Plaintiff testified that the offending conduct was ongoing and that her consent to the

conduct was based on a fear of reprisal from Dunning. This makes no sense for the reasons

previously discussed.

      The next question is whether Synergy could be liable on this claim because Dunning was

both the offending party and Synergy's CEO and thus could ratify his own wrongful conduct.   In

the present circumstances, the undersigned finds that he could not.   Dunning's position as Synergy's

CEO, without more, is insufficient to demonstrate ratification. *See Missouri Public Entity Risk Mgt.*

*Fund v. Investors Ins. Co*., 338 F. Supp. 2d 1046, 1053 (W.D. Mo. 2004) ("Job title alone is not

enough to demonstrate that ratification has occurred or was authorized.").   Synergy is not liable for

the conduct of Dunning for the reasons discussed previously.

## IV.   CONCLUSION

      BHC's motion for summary judgment (doc. 54) and Synergy's motion for summary

judgment (doc. 50) are both due to be granted as to all of Plaintiff's claims.   An appropriate order

will be entered contemporaneously herewith.

**DONE**, this 31st day of December, 2014.

**JOHN E. OTT**
Chief United States Magistrate Judge